UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA RIDENTI, as parent and guardian of R.A. and R.M.A., minors; individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>   v.<br><br>GOOGLE, LLC and YOUTUBE LLC,<br><br>                  Defendants. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiffs Paula Ridenti, as parent and guardian of her minor children, R.A. and R.M.A. (the "Ridenti Children," or "Plaintiffs"), by and through undersigned counsel, for their complaint against Defendants Google, LLC and YouTube LLC (the "Google Companies"), allege as follows:

**Preliminary Statement**

1. This is a class action brought by the Plaintiffs, on behalf of themselves and all other children from whom the Google Companies have collected personal information without express parental consent, in violation of Mass. Gen. Laws ch. 93A, §§ 2, 9 ("Chapter 93A"). The case arises out of the Google Companies' unfair and unlawful collection of such information.

2. The Google Companies operate YouTube, a video-sharing platform on the internet at www.youtube.com. YouTube and its content generators monetize videos posted on YouTube by allowing the Google Companies to present advertisements to viewers, from which both the channel owners and the Google Companies share revenue. In order to maximize

advertising revenue, the Google Companies collect information from viewers and track the viewer's online activities, thus permitting the Google Companies to present advertising that is specifically targeted to each particular viewer based on the particular viewer's viewing history and other personal data the Google Companies have collected about the viewer.

3. Certain YouTube channels are plainly directed to children under the age of thirteen, and, in fact, the Google Companies have marketed YouTube to advertisers based in part on the Google Companies' ability to target advertising to children under the age of thirteen. The Google Companies collected personal information from children under the age of thirteen in order to serve targeted advertising to them, all without receiving any consent from those children's parents for the collection and use of such personal information.

4. In September 2019, the FTC announced that the Google Companies would pay a $170 million fine for unfair practices in connection with the Google Companies' YouTube platform. Specifically, the basis for the fine was the Google Companies' collection of personal information from children under the age of thirteen without their parents' consent, in violation of the FTC Act, the Children's Online Privacy Protection Act ("COPPA"), and the FTC's regulations under both acts. That fine will not compensate those harmed by the Google Companies' unfair conduct; the United States government and the State of New York will keep the entirety of that fine.

5. Chapter 93A prohibits "unfair…acts and practices," and in turn provides that phrase should be construed consistently with the interpretations given to that phrase by the Federal Trade Commission ("FTC") to the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) ("FTC Act"). The FTC defines "unfair practices" under the FTC Act to include the conduct of an online service operator, with actual knowledge that the users of its service are children,

collecting, using, or disclosing personal information of such children, as defined by regulations promulgated by the FTC. 16 C.F.R. 312.3.

6. Although Plaintiffs do not seek through this litigation a remedy specifically for the Google Companies' violation of any federal law as such, it has long been the law under Chapter 93A, as expressed in Section 2 of the statute itself, that practices deemed to be unfair practices under the FTC Act are likewise unfair practices under Chapter 93A. That is, because the prohibitions of Chapter 93A parallel the prohibition of the FTC Act, Plaintiffs, through this action, seek relief for the Google Companies' unfair acts in violation of Chapter 93A.

7. The Google Companies have engaged in unfair acts in violation of Chapter 93A by collecting personal information, such as persistent identifiers, from viewers it knew were children under the age of thirteen, without providing notice to or obtaining verifiable consent from the children's parents. The Ridenti Children, for example, have consistently over the last four years viewed channels on YouTube directed to children. The Google Companies have collected personal information concerning the Ridenti Children through their use of those channels. At no point have the Google Companies obtained consent from children's parents, including Paula Ridenti. It is no secret that many, if not most, children in Massachusetts under the age of thirteen have likewise regularly viewed YouTube, and the Google Companies' unfair acts and practices have been the same as to all such children: they have collected and used personal information of such children in violation of COPPA, the FTC Act, and Chapter 93A.

8. The Google Companies have derived substantial profits from their unlawful collection of personal information through YouTube from Massachusetts children, in the form of advertising revenue generated as a result of its targeted advertising, which in turn depends upon its collection of personal information. The profits the Google Companies obtained from their

3

unfair acts and practices reflect the damages the Class has suffered from that conduct—i.e., the value of the personal information that the Google Companies unfairly collected and used.

9.   The Google Companies are liable to Plaintiffs and Class members for all damages resulting from the Google Companies' unfair acts and practices described in this complaint.

**Parties**

10.   Plaintiff Paula Ridenti is a resident and citizen of Massachusetts who is the parent and legal guardian of both R.A. and R.M.A., two children under the age of thirteen who, within the last four years, have regularly viewed on Youtube videos on channels directed primarily to children under the age of thirteen.

11.   Defendant Google LLC ("Google"), is a Delaware limited liability company with its principal place of business in Mountain View, California. Google is the parent company of defendant YouTube LLC.

12.   Defendant YouTube LLC ("YouTube") is a Delaware limited liability company with a principal place of business in San Bruno, California.

13.   The Google Companies together have acted in concert to advertise, market, and distribute the YouTube video sharing platform to consumers throughout the United States.

**Jurisdiction and Venue**

14.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(d) and 1453, because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals; (2) the Class defined below consists of more than one hundred proposed class members; (3) the citizenship of at least one class member is different

from the Google Companies' citizenship[1]; and (4) the aggregate amount in controversy of the claims of Plaintiffs and the putative Class exceeds $5,000,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over the Google Companies because the Google Companies purposefully availed themselves of the privilege of conducting business activities in Massachusetts (e.g., marketing YouTube in Massachusetts), and Plaintiffs' claims arise out of those activities in Massachusetts, and the exercise of jurisdiction over them is constitutionally reasonable.

16.     Venue is proper in this jurisdiction pursuant 28 U.S.C. § 1391 because the Google Companies are subject to personal jurisdiction in this District, and the actions of the Google Companies that gave rise to the claims against them in this action took place and emanated this District. Venue is also proper in this jurisdiction pursuant to 18 U.S.C. § 1965.

**Factual Allegations**

*How the YouTube Platform and Behavioral Advertising Work.*

17.     The Google Companies operate a video-sharing platform on the internet known as YouTube. YouTube is accessible through web browsers; mobile applications on smartphones and tablets; smart televisions; cable television set-top boxes; television accessories (such as

---

[1] Because jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), even though the Google Companies are limited liability companies, each defendant is a citizen of the states "where it has its principal place of business and…under whose laws it is organized." 28 U.S.C. § 1332(d). That is, the rules applicable in traditional non-class diversity cases, under which the citizenship of limited liability companies would be determined by the citizenship of those companies' members, do **not** apply to this case. *See, e.g., Erie Ins. Exch. V. Erie Indemn. Co.*, 722 F.3d 154, 161 n.7 (3d Cir. 2013) (explaining that the Class Action Fairness Act "evinces an intent that suits by unincorporated associations be treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entity's principal place of business and not by the citizenship of its members").

Google's Chromecast, Amazon Fire TV Stick, Roku, and others); and video game consoles. YouTube is a ubiquitous internet platform, accounting for more than 35% of global mobile internet traffic. It is, by far, the largest video platform on the internet, and is the second-most popular website in the world, behind only the Google search engine.

18. Those wishing to view YouTube videos do not need an account to do so. Almost anyone can view most content on YouTube regardless of age. Videos are freely viewable on YouTube without the need to log in to any account.

19. The YouTube platform permits content generators (i.e., those that record, edit, and publish videos) to post videos on its platform. In order to post videos and to perform certain other functions (such as commenting on videos posted by others), the Google Companies require a user to create a Google account, including by requiring the user to provide a first and last name, e-mail address, and date of birth.

20. A Google account is not specific to YouTube; instead, a single Google account can be used to access a broad range of Google services, including Google search, email (on Google's Gmail platform), Google Maps, Google Photos, Google Drive, and numerous other services.

21. Although the Google Companies do not require a user to log in to view videos, users are often logged in automatically to their Google account when they view YouTube videos, based on how they use their device. For example, many users of Google services configure their web browsers to log in automatically to Google any time they access a Google service—be it YouTube, Gmail, Google Search, or some other service. Likewise, users of mobile devices are often automatically logged into Google by virtue of their use of certain Google applications, such as Gmail, or by virtue of their use of an Android phone, which requires a phone owner to be

logged into a Google account for full functionality. Moreover, users are not automatically logged off when they exit YouTube; as a result, many users are logged in for extended periods of time (often, indefinitely).

22.     In order to upload content on YouTube, a user creates a "channel" to display their content. These users ("channel owners") can set "key words" for their channel that help other users searching for videos on YouTube find their channel. Channel owners can also set key words for individual videos they upload and choose whether to enable comments.

23.     Channel owners include commercial entities, including both entities that generate traditional television video content that they wish to offer on YouTube, and also online content generators that create video content specifically for online platforms such as YouTube. Such channel owners have the option to "monetize" their channel by allowing the Google Companies to serve advertisements to viewers. The channel owners and the Google Companies earn revenue from those advertisements, which they can share.

24.     Unlike television advertisements, in which the same advertisements are shown to all viewers on a particular channel at a particular time (or at least all viewers watching a particular channel within a certain geographical area), advertisements on YouTube can be customized to the particular viewer. YouTube has pioneered what is known as "behavioral advertising," which serves advertising to particular viewers based on information the platform has concerning that viewer. Such information may include YouTube viewing history and other information the Google Companies have collected through a particular user's usage of other services, including Google services.

25.     Such "behavioral advertising" is activated by default on monetized channels. To maximize the customization of advertisements through behavioral advertising, YouTube keeps

7

track of all videos viewed by a particular viewer. This tracking can occur through a viewer being logged into their Google account, in which case YouTube can track the history of videos viewed by that account.

26. Even if a viewer is not logged on, however, YouTube can track the videos a particular viewer views by using "cookies" in web browsers and "mobile advertising identifiers" on mobile devices. Cookies and mobile advertising identifiers are pieces of code stored on a user's device that a website or application can use to identify that individual, even if the individual is not logged into an account on the website or application. The Google Companies use these technologies to track the viewing habits of users of YouTube even when they are not logged in, which then enables the Google Companies to serve behavioral advertising—that is, advertisements targeted towards particular individuals based on their viewing habits.

27. Although Google Companies offered channel owners the option to disable behavioral advertising, the default for monetized channels was for behavioral advertising to be activated, and the Google Companies discouraged channel owners from deactivating behavioral advertising by telling them that if they turn off behavioral advertising, this change may "significantly reduce" the advertising revenue they receive from the channel.

28. Channel owners can earn revenue not only from behavioral advertising on the YouTube platform itself but also via technologies through which the Google Companies use a viewer's using history to serve behavioral advertising to a viewer on websites other than YouTube, including both other Google websites and third-party websites that pay Google to access the data. This type of cross-website customized advertising is reflected in the broad experience of internet users who perform a search for a product on one website only to find that same exact product advertised to them on another, unrelated website. The Google Companies

engage in similar conduct—permitting third-party websites to serve customized advertising to a particular individual based on the individual's YouTube viewing history.

*The Google Companies' Targeting of Young Children on the YouTube Platform.*

29. In the early days of YouTube, the platform was dominated by content generated by ordinary YouTube users, who would upload their own videos primarily as a form of social media.

30. Over time, however, the content on YouTube shifted. The Google Companies sought to increase revenue from the YouTube platform, and professional content generators, including major traditional media content generators such as television networks, began to offer their content on the YouTube platform in order to generate revenue in addition to the revenue such companies obtain from traditional broadcast media.

31. These professional content generators included companies who primarily marketed their content to young children. For example, Nickelodeon—a major cable television network targeted towards children, owns a YouTube channel with over 7 million subscribers and nearly 3,500 videos. Certain Nickelodeon videos posted on YouTube have been viewed tens of millions of times. The aggregate views of Nickelodeon videos on YouTube is well into the billions. Numerous other channels, based on their content, are clearly directed towards children.

32. As content generators targeting children on YouTube have expanded dramatically, YouTube has become, far and away, the most popular smartphone and tablet application for children under the age of thirteen. The platform is popular with children because it permits a practically unlimited supply of videos catering to any child's tastes. Moreover, YouTube comes as a standard application on many phones and tablets (Android phones and tablets in particular), making it easy for children to access if they have their own phone or tablet, or if a parent permits the child to use the phone or tablet.

33. Nearly all modern parents are familiar with the common sight of a young child, nose practically touching the screen, watching video after video, sometimes for hours on end. One of the most common questions now posed from young children to their parents is: "can I watch YouTube on your phone"? The tradition of Saturday morning cartoons have been replaced with mornings, days, and evenings—every day—of YouTube viewing, interrupted only occasionally by a child's request to purchase a toy advertised to her on YouTube.

34. Advertisers have not failed to notice the ubiquitous use of YouTube among young children, and neither have the Google Companies. The Google Companies market YouTube as a top destination for kids to popular brands of children's products and services. For example, in a presentation to toy brand Mattel, maker of Barbie and Monster High, entitled "Insights on Families Online," the Google Companies stated, "YouTube is today's leader in reaching children age 6-11 against top TV channels." In a presentation provided to toy brand Hasbro, maker of My Little Pony and Play-Doh, the Google Companies claimed that "YouTube was unanimously voted as the favorite website for kids 2-12." In another presentation to Hasbro, the Google Companies referred to YouTube as "[t]he new 'Saturday Morning Cartoons"" and "the #1 source where children discover new toys + games."

35. Toymakers have gone even further than advertising on child-oriented YouTube channels; many have created their own channels on the platform, blurring the lines between entertainment and advertisement. There are YouTube channels for Barbie, Monster High, Hot Wheels, Thomas & Friends, and innumerable others. One of the most popular YouTube channels among kids—Ryan's World—is essentially a running advertisement for the newest toys, as "Ryan" opens and tests a seemingly endless stream of toys sent to his home by toymakers.

36.     The Google Companies have recognized their core YouTube viewer base of young children through a content rating system, which categorizes content into age groups and includes categories for children under 13 years old. In order to align with content policies for advertising, the Google Companies rate all videos uploaded to YouTube, as well as the channels as a whole, with ratings of Y (generally intended for ages 0-7); G (intended for any age); PG (generally intended for ages 10+); Teen (generally intended for ages 13+); MA (generally intended for ages 16+); and X (generally intended for ages 18+). The Google Companies assign these ratings through both automated and manual review. Previously, the Google Companies also used a classification for certain videos shown on YouTube as "Made for Kids."

37.     Despite the fact that the Google Companies themselves classify videos as being designed for young children, the Google Companies did not treat channels or videos directed to young children any differently for purposes of data collection from other content on YouTube. That is, the Google Companies continued to allow the channel owner to monetize "Y" rated content and earn revenue from behavioral advertising—that is, customized advertising based on the collection of viewing history and other personal information about the child.

38.     YouTube hosts thousands of channels that are directed to children, as reflected in the subject matter, visual content, language, and use of animated characters or child-oriented activities. Many YouTube channels pitch themselves as being for children. The FTC's complaint against the Google Companies catalogued many such examples of channels specifically directed to children.

39.     The Google Companies also specifically educate content generators on how to pitch their content to young children, presenting resources such as a "Creating for Kids

Playbook" that direct channel owners how to make content for young children and make money from such content.

40. Although the Google Companies persistently and pervasively collected, used, and disclosed personal information from children under the age of thirteen, the Google Companies opted not to obtain verifiable parental consent before doing so. The Google Companies have collected billions of dollars in profits by monetizing the personal information they obtained from children under the age of thirteen, all without any verifiable parental consent.

### *The Google Companies' Conduct Were Unfair Acts and Practices in Violation of Chapter 93A.*

41. As noted, the FTC concluded that the Google Companies engaged in unfair acts and practices. The basis for the FTC's conclusion derives from an FTC rule, which defines "unfair or deceptive acts or practices" specifically with respect to the "collection, use, and/or disclosure of personal information from and about children on the Internet." 16 C.F.R. 312.1. The rule defines such practices as unfair practices under the FTC Act and COPPA. *See* 15 U.S.C. § 6502(c). The FTC regulation, 16 C.F.R. 312.1, *et seq.*, is referred to herein as the "FTC Rule."

42. The FTC, through the FTC Rule, has defined it to be an unfair practice for an "operator of a Web site or online service directed to children, or any operator that has actual knowledge that it is collecting or maintaining personal information from a child, to collect personal information" unless the operator, among other things, "obtain[s] verifiable consent prior to any collection, use, and/or disclosure of personal information form children." 16 C.F.R. 312.3.

43. The FTC defines "verifiable consent" to require real, verified consent. The rule is not satisfied merely by a viewer clicking a confirmation that they are thirteen or older, or that they have obtained their parents' permission. Instead, "verifiable consent" requires a physically signed consent form, verification with a credit card or other online payment, verification via

telephone or video call with a parent, or verification via government-issued identification. 16 C.F.R. 312.5.

44. Moreover, personal information is defined broadly. It is not limited to social security numbers, birthdates, names, and such. Instead, personal information includes, among other things, information about an individual obtained through what are called "persistent identifiers." The term "persistent identifiers" are code that "can be used to recognize a user over time and across different Web sites or online services." These include cookies, IP addresses, and unique identifiers—the precise technologies the Google Companies used to track young children, whether they were logged in or not, and to serve personalized behavioral advertising to them.

45. As reflected in the FTC's complaint against the Google Companies, the Google Companies openly flouted the FTC Rule and therefore engaged in unfair practices under the FTC Act. Specifically:

   a) The Google Companies operated an online service directed to children—specifically, YouTube, and the Google Companies had had actual knowledge that they were collecting personal information concerning children.

   b) The Google Companies routinely collected personal information from children, including most significantly through the use of personal identifiers that tracked children's YouTube viewing for purposes of serving behavioral advertising.

   c) The Google Companies failed to obtain verifiable parental consent prior to collecting, using, and disclosing children's personal information.

46. Like the FTC Act, Chapter 93A prohibits "unfair…acts and practices," but Chapter 93A does not define what acts and practices are unfair. To fill this gap, the Massachusetts legislature indicates that courts construing Chapter 93A "will be guided by the

interpretations given by the Federal Trade Commission…to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as form time to time amended." The FTC Rule is such an interpretation by the FTC defining conduct as an unfair act or practice. 15 U.S.C. § 6502(c); 15 U.S.C. § 57(a)(a)(1)(B). The FTC Rule reflects the FTC's interpretation of the FTC Act and the FTC's judgment that conduct that violates the FTC Rule is an unfair act or practice under the FTC Act. Accordingly, in construing the scope of unfair practices under Chapter 93A, a court should be guided by the FTC's determination that conduct violating the FTC Rule constitutes an unfair act.

47. The conduct described in this complaint establishes that Uber engaged in unfair acts and practices in violation of Chapter 93A. Specifically, Uber engaged in unfair practices, among other ways, by knowingly collecting personal information from children, including most significantly through the use of personal identifiers that tracked children's YouTube viewing for purposes of serving behavioral advertising, without obtaining the verifiable consent of those children's parents.

48. The Class has been directly harmed by the Google Companies' unfair conduct in multiple ways. The personal information the Google Companies unfairly obtained from the Class has real, economic value, which the Google Companies have expropriated through the unfair collection, use, and disclosure of that information. The profits the Google Companies obtained by the collection, use, and disclosure of the Class's personal information without verified parental consent reflects the value the Google Companies unfairly obtained and used from the Class. The Class is entitled to damages for each such unfair act.

**Class Action Allegations**

49. Plaintiffs reallege and incorporate the allegations contained in the paragraphs above.

50. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Nationwide Class consisting of "All children residing in Massachusetts who, at a time when the children were under the age of thirteen, viewed videos on YouTube and from whom the Google Companies collected, used, or disclosed personal information without first obtaining verified parental consent."

51. Plaintiffs reserve the right to amend the definition of the Class.

52. This action is properly maintainable as a class action.

53. There are tens of thousands of members of the Class in Massachusetts. Accordingly, joinder of all members is impractical.

54. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among questions of law and fact in common to the Class are:

   a) Whether the Google Companies operated a Web site or online service;

   b) Whether the Google Companies had knowledge that they were collecting or maintaining personal information from children;

   c) Whether the Google Companies collected, used, or disclosed personal information about children; and

   d) Whether the Google Companies obtained verifiable consent from children's parents prior to collecting, using, or disclosing any personal information concerning the children;

   e) Whether the Google Companies' conduct was unfair, including the question of whether and how the Court, in construing Chapter 93A, should be guided by the FTC's interpretations of the FTC Act;

    f)      The damages suffered by the Class caused by any unfair conduct by the Google Companies; and

    g)      Whether the Google Companies engaged in unfair acts or practices knowingly or willfully.

55. Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs allege a common course of conduct by the Google Companies toward each member of the Class. Specifically, the Google Companies' conduct derived from policies and practices that were common among the Class, rather than the result of conduct specific to particular Class members.

56. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel who have extensive experience prosecuting class actions and who, with Plaintiffs, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiffs do not have any interest adverse to the Class.

57. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual Class member is likely not enough to sustain the expense and burden of individual litigation. Hence it would be impracticable for all members of the Class to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

58. The prosecution of separate actions against the Google Companies would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which could establish incompatible standards of conduct for Defendant. In addition, adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

59. The members of the Class are identifiable through the Google Companies' own detailed electronic records.

60. The Google Companies have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### Count I

### Mass. Gen. Laws ch. 93A §§ 2, 9

**(On behalf of all Plaintiffs and the Class)**

61. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

62. This Count is pled on behalf of Plaintiffs and the Class.

63. At all relevant times, the Google Companies were engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of providing the YouTube service within the Commonwealth of Massachusetts.

64. By conducting the acts and practices described above, the Google Companies have engaged in unfair acts or practices in the conduct of trade or commerce in violation of Chapter 93A, Sections 2 and 9.

65. The violations of Chapter 93A by the Google Companies as described herein were done willfully, knowingly, and in bad faith.

66. As a direct and proximate result of the Google Companies' conduct, Plaintiffs and the members of the Class were harmed.

67. Plaintiffs sent the Google Companies written demand for relief pursuant to Chapter 93A, Section 9, identifying the claimants and reasonably describing the unfair acts or

practices relied upon and the injuries suffered, on February 7, 2020. The Google Companies responded refusing to offer any relief in response to Plaintiffs' demand.

68.   As a result of the Google Companies' violation of Chapter 93A, the Google Companies are liable to Plaintiffs and the Class for up to three times the damages that Plaintiffs and the Class incurred, or at the very least the statutory minimum award of $25 per unfair act and practice as alleged herein, together with all related court costs, attorneys' fees, and interest.

## Prayers for Relief

WHEREFORE, Plaintiffs pray for relief in the form of an order as follows:

(a)   Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiffs as class representatives and their attorneys as class counsel;

(b)   Awarding actual damages to Plaintiffs and the members of the Class;

(c)   Awarding double or treble damages pursuant to Chapter 93A;

(d)   Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

(e)   Awarding such other and further relief which the Court finds just and proper.

## Jury Demand

Plaintiffs demand a trial by jury on all claims so triable.

Dated: March 13, 2020                              By their attorneys,

*/s/ Patrick J. Vallely*
Edward F. Haber (Mass. BBO # 215620)
Patrick Vallely (Mass. BBO # 663866)
**Shapiro Haber & Urmy LLP**
Seaport East
Two Seaport Lane, Floor 6
Boston, MA 02210
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
pvallely@shulaw.com