UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAULA RIDENTI, as parent and guardian of R.A. and R.M.A., minors; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and YOUTUBE, LLC,<br><br>Defendants. | Case No. 1:20-cv-10517 |

**GOOGLE LLC AND YOUTUBE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER PURSUANT TO THE FIRST-FILED RULE AND 28 U.S.C. § 1404(a)**

Defendants Google LLC and YouTube, LLC (together "Google") hereby submit this Memorandum of Law in Support of their Motion to Transfer Pursuant to the First-Filed Rule and 28 U.S.C. § 1404(a).

## I.     INTRODUCTION

Plaintiff Paula Ridenti's Complaint asserts a claim under Massachusetts General Law Chapter 93A on behalf of a putative class of Massachusetts residents based on allegations that Google collected, used, or disclosed personal information from children under the age of thirteen who watched YouTube without obtaining verified parental consent, in violation of the federal Children's Online Privacy Protection Act ("COPPA").  *See* Dkt. No. 1 ("*Ridenti* Compl.") ¶¶ 50, 64.  The Complaint substantially overlaps with an earlier-filed action pending in the Northern District of California—*Hubbard, et al. v. Google LLC, et al.*, No. 5:19-cv-07016-BLF (N.D. Cal.) ("*Hubbard*").  Like the Ridentis, the plaintiffs in *Hubbard* assert claims against Google

1

based on the same core allegations about the collection and use of children's information through YouTube, including a claim pursuant to Mass. Gen. Laws. Ch. 93A on behalf of a putative Massachusetts subclass.  Both actions, in turn, rely heavily on the allegations made by the Federal Trade Commission ("FTC") and the New York Attorney General in a joint COPPA enforcement action, which resulted in a settlement shortly before the *Hubbard* action was filed.

Given the significant overlap with the parties and claims in the *Hubbard* action, this case should be transferred to the Northern District of California for consolidation with *Hubbard* pursuant to the "First-Filed Rule," which provides that the venue of the first action filed should be the preferred venue.  In addition, this action should be transferred to that court under 28 U.S.C. § 1404(a).  Transfer is in the interests of justice, as it will eliminate the risk of inconsistent rulings on issues that are substantially similar (if not identical) and streamline potentially duplicative proceedings.  Transfer also will conserve this Court's resources and create efficiencies for both the parties and witnesses, with no adverse impact on the rights of Massachusetts residents.  The putative class here is already represented in *Hubbard,* and the claims here are already asserted in that case.  Moreover, Plaintiffs' choice of forum deserves little weight because this case (like the first-filed *Hubbard* action) is a putative class action predicated on violations of COPPA and the FTC Act, and the success of those claims will turn in large part on interpretation of federal law.  Thus, Google respectfully requests that this action be transferred to the Northern District of California.

## II.     FACTUAL BACKGROUND

### A. The First-Filed Hubbard Litigation

Nichole Hubbard filed a complaint in the Northern District of California on October 25, 2019.  *See Hubbard*, Dkt. No. 1 (N.D. Cal. Oct. 25, 2019) ("*Hubbard* Compl."), attached as Ex. A.  The complaint asserted various state law claims against both of the Defendants in this

2

case—Google LLC and YouTube, LLC—as well as several entities that offer content on YouTube. After Google and the other defendants in *Hubbard* filed motions to dismiss on January 23, 2020, *see, e.g.*, *Hubbard*, Dkt. No. 65 (Jan. 23, 2020), plaintiffs filed an amended and later a second amended complaint ("*Hubbard* SAC") adding five plaintiffs and 12 claims, including a Massachusetts resident and a claim under Ch. 93A. *Hubbard*, Dkt. Nos. 88 & 92. The defendants' motion to dismiss the *Hubbard* SAC was filed on April 29, and will be fully briefed by May 27. *See Hubbard*, Dkt. No. 91.

The *Hubbard* SAC includes a claim under Ch. 93A on behalf of a putative Massachusetts subclass consisting of "all children and parents and/or legal guardians of persons residing in the Commonwealth of Massachusetts who are younger than the age of thirteen and used YouTube, or were younger than the age of thirteen when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent." *Hubbard*, Dkt. No. 92 ¶¶ 29, 190 (Apr. 14, 2020), attached as Ex. B. That claim and the other claims asserted in *Hubbard* are predicated on alleged violations of COPPA. *See id.* ¶¶ 7, 75-93, 211-18, 281-356. Plaintiffs' suit is grounded in the following core allegations:

- Plaintiffs' minor children "watched many of the monetized YouTube channels during the Class Period." *Id.* ¶ 9. "Defendants surreptitiously and deceptively collected the Personal Information" of Plaintiffs' minor children "and other minors under the age of thirteen without verifiable parental consent." *Id.* ¶ 10.

- The information Google collected from users included "persistent identifiers," like internet protocol addresses and device serial numbers, which enabled Google to construct profiles of individuals over time by tracking their online activities. *See id.* ¶ 6; *see also id.* ¶¶ 60-66.

- "YouTube encouraged content creators" to categorize their content by age group in order to "properly target children viewers with advertisements." *Id.* ¶ 88. And channel owners monetized their content by "creating content intentionally designed to attract children under thirteen." *Id.* ¶ 95.

- Google "generate[d] revenue from the YouTube Platform" through the use of advertising placements on certain channels. *Id.* ¶ 5. In addition, Google engaged in targeted advertising toward children. *See id.* ¶¶ 71, 113.

- Defendants violate the FTC Act and COPPA "[w]hen videos are viewed on the YouTube Platform by children under the age of thirteen, [and] Defendants do not disclose that they are tracking, profiles, and targeting children—and do not obtain verified parental consent to do so." *Id.* ¶ 83.

On behalf of the putative Massachusetts subclass, the *Hubbard* plaintiffs assert that Google violated COPPA, that violations of COPPA constitute violations of the FTC Act, and that Google therefore engaged in acts and practices that violate Ch. 93A. *See id.* ¶¶ 82, 281-94. Moreover, the *Hubbard* plaintiffs also seek to represent a proposed nationwide class of "all children and parents and/or legal guardians of children residing in the United States who are younger than the age of thirteen and used YouTube, or were younger than the age of thirteen when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent." *Id.* ¶ 186.

The defendants' motion to dismiss in *Hubbard* raises a number of grounds for dismissal, including preemption. Notably, COPPA has an express preemption clause that provides: "No State or local government may impose any liability . . . in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section." 15 U.S.C. § 6502(d).

### B. The Later-Filed Ridenti Litigation

The Ridentis filed the instant Complaint on March 13, 2020, more than four months after the *Hubbard* complaint was filed. *See* Dkt. No. 1. The Ridentis initiated this action in Massachusetts despite YouTube's Terms of Service, which provide that any action related to the

4

YouTube service be filed in Santa Clara, California.[1] The allegations in the *Ridenti* Complaint are based on purported violations of COPPA and parallel those in the *Hubbard* SAC:

- Plaintiff Paula Ridenti's children have watched YouTube channels "consistently over the last four years." *Ridenti* Compl. ¶ 7. "[T]he Google Companies collect information from viewers and track the viewer's online activities," including individuals under the age of thirteen, in order to present more targeted advertisements to users. *Id.* ¶ 2.

- The information Google collected from users included "persistent identifiers," such as cookies, IP addresses, and unique identifiers, as well as other code that can be used to recognize users across different online services. *See id.* ¶¶ 7, 44.

- The YouTube channel owners were traditionally "ordinary YouTube users" who uploaded their own content to YouTube's platform. But "traditional media content generators such as television networks," including companies that primarily market content to children, have begun to operate channels and offer their content on YouTube to generate revenue. *Id.* ¶¶ 29-31.

- Consequently, some YouTube channels are "plainly directed to children," and "[t]he Google Companies collected personal information from children under the age of thirteen in order to serve targeted advertising to them, all without receiving any consent from those children's parents for the collection and use of such personal information." *Id.* ¶ 3; *see also id.* ¶¶ 29-40.

- "YouTube and its content generators monetize videos posted on YouTube by allowing the Google Companies to present advertisements to viewers, from which both the channel owners and the Google Companies share revenue." *Id.* ¶ 2. In particular, on monetized channels, Google has by default used "'behavioral advertising,' which serves advertising to particular viewers based on information the platform has concerning the viewer." *Id.* ¶ 24.

- The Google Companies' practices were done in violation of COPPA and the FTC Act, which prohibit the collection, use, and/or disclosure of personal information from children without "verifiable consent." *See id.* ¶¶ 7, 41, 45.

---

[1] *See* YouTube Terms of Service (Effective Dec. 10, 2019), https://www.youtube.com/static?template=terms ("YouTube Terms of Service"), attached as Ex. C. The Court may take judicial notice of YouTube's publicly available Terms of Service. *See, e.g.*, *Sarvis v. Polyvore, Inc.*, No. 12-12233-NMG, 2013 WL 4056208, at *4 n.3 (D. Mass. Aug. 9, 2013) (noting that courts may take judicial notice of "information publicly displayed on a party's own website").

The Ridentis seek to represent a "Nationwide Class" consisting of "[a]ll children residing in Massachusetts who, at a time when the children were under the age of thirteen, viewed videos on YouTube and from whom the Google Companies collected, used, or disclosed personal information without first obtaining verified parental consent." *Id.* ¶ 50.  This proposed class overlaps with the *Hubbard* Massachusetts subclass, and in addition, is subsumed by the putative nationwide class in *Hubbard*.  *See Hubbard* SAC ¶¶ 186, 190.  Like the *Hubbard* plaintiffs, the Ridentis assert that Google's alleged practices violated the FTC Act and COPPA, *see Ridenti* Compl. ¶¶ 41-42, and on this basis, they assert that Google violated Ch. 93A.  *See id.* ¶¶ 46-47, 61-68.  A chart outlining some of the overlap between the two matters is attached as an Appendix to this brief.

### III.     ARGUMENT

**A. Transfer to the Northern District of California Is Appropriate Because *Hubbard* Was Filed First and the Parties and Claims Significantly Overlap**

Where, as here, similar actions are proceeding in two different federal courts, the first-filed action is the preferred venue for the litigation.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Mead Johnson & Co.*, No. 11-100-42-NMG, 2011 WL 6148656, at *8 (D. Mass. Dec. 8, 2011) (citing *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000)).  When applying the First-Filed Rule, courts consider: (1) which action was filed first, and (2) the similarity of the actions. *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 173 & n.1 (D. Mass. 2009).  The actions need not be identical to warrant transfer under the Rule.  *See, e.g., id.* (noting that courts apply the First-Filed Rule when actions are "similar" rather than "identical") (citing *Cianbro Corp. v.*

6

*Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)).  Each factor supports transfer of this action to the Northern District of California.[2]

First, there is no question that the *Hubbard* action was filed first.  The suit was initiated on behalf of a nationwide class more than four months before the Ridentis filed this action in March.  *Compare Hubbard* Compl. (Oct. 25, 2019), *with Ridenti* Compl. (Mar. 13, 2020).

Second, the actions are substantially similar.  The putative classes of Massachusetts plaintiffs are essentially co-extensive, as shown below:

| *Hubbard* | *Ridenti* |
|---|---|
| • "Nationwide class" including a "Massachusetts subclass" of "all children and parents and/or legal guardians of persons residing in the Commonwealth of Massachusetts who are younger than the age of thirteen and used YouTube, or were younger than the age of thirteen when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent." *Hubbard* SAC ¶¶ 29, 186, 190. | • A "Nationwide Class" consisting of "[a]ll children residing in Massachusetts who, at a time when the children were under the age of thirteen, viewed videos on YouTube and from whom the Google Companies collected, used, or disclosed personal information without first obtaining verified parental consent." *Ridenti* Compl. ¶ 50. |

Both actions also name Google LLC and YouTube LLC as defendants.  The *Hubbard* SAC names additional defendants, but the *Ridenti* Complaint's allegations against Google are substantially similar to those in *Hubbard*.  Notably the First-Filed Rule "only requires similar parties, not identical ones."  *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 351 (D. Mass.

---

[2] There are two exceptions to the First-Filed Rule: (1) "special circumstances" justifying transfer, such as when one party engages in misleading conduct in an attempt to win a "race to the courthouse," and (2) when the balance of convenience favors the second-filed action.  Neither of these exceptions applies here.  There was no "race to the courthouse," and as shown in Section III.B.3 below, convenience favors transfer here.  *See Idenix Pharms., Inc. v. Gilead Scis., Inc.*, No. 13-13052-DJC, 2014 WL 12782106, at *3 (D. Mass. June 30, 2014).

2019), *appeal filed on other grounds*.

There also is significant overlap between the allegations and claims asserted in both actions. As shown by the examples in the attached Appendix, both suits are predicated on substantively identical allegations that Google collected, used, or disclosed personal information from children under the age of thirteen who watched YouTube without first obtaining verifiable parental consent. *See, e.g.*, *Hubbard* SAC ¶¶ 186, 190; *Ridenti* Compl. ¶¶ 50, 64. Both complaints cite and rely heavily on the allegations made by the FTC and the New York Attorney General in their joint COPPA enforcement action against Google, announced with a settlement in September 2019. *See, e.g.*, *Hubbard* SAC ¶¶ 11, 91, nn.15-19; 92, n. 23; 93, nn. 24-25; *Ridenti* Compl. ¶¶ 4, 38, 41, 45. Plaintiffs in both suits, moreover, assert claims under Ch. 93A based on allegations that Google's practices violated the federal FTC Act and COPPA. *See Hubbard* SAC ¶ 286; *Ridenti* Compl. ¶ 64. As a result, both cases will require a court to assess whether COPPA preempts claims under Ch. 93A and whether plaintiffs have stated a valid claim for relief under Ch. 93A predicated on parallel allegations of collection and use of children's information. Both cases will also require evaluations of the same allegations of purported injury and the same questions of fact regarding Google's alleged conduct, as well as discovery disputes over these common issues. This overlap is more than sufficient to merit application of the First-Filed Rule. *See, e.g.*, *Idenix Pharms., Inc.*, 2014 WL 12782106, at *3 (granting motion to transfer under the First-Filed rule and concluding that it "is not a wooden prerequisite" that "the cases be mirror images of each other"); *Wiley*, 667 F. Supp. at 173 (granting transfer of class action to California federal court where the "causes of action are very similar, although the two cases invoke the laws of different states").

Indeed, it would be "inefficient and impractical to have two overlapping class actions proceed individually in two separate courts." *Bodley v. Whirlpool Corp.*, No. 17-cv-05436-JST, 2018 WL 2357640, at *4 (N.D. Cal. May 24, 2018). These factors counsel heavily in favor of transfer to the court where the first class action was filed. *See, e.g.*, *Prime Steakhouse v. Mowi ASA et al.*, 2:19-cv-00207-JAW, 2020 WL 1443759, at *10 (D. Me. Mar. 25, 2020) (affirming application of First-Filed Rule where there was "'significant overlap'" between the suits "each of which will 'require resolution of the same underlying factual issue'"); *Henry v. Home Depot U.S.A., Inc.*, No. 14-cv-04858-JST, 2016 WL 4538365, at *4 (N.D. Cal. Aug. 31, 2016) (noting that efficiency rationale of First-Filed Rule "particularly heightened where, as here, the class actions involve overlapping claims and class periods"). Given the similarity in the allegations and the legal and factual issues to be addressed, the Court should transfer this action to the Northern District of California for consolidation with the first-filed *Hubbard* litigation.

**B. Transfer to the Northern District of California Will Serve the Interests of Justice and Conserve the Resources of the Court and the Parties**

The Court also should transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), courts may "transfer any civil action to any other district or division where it might have been brought" when transfer would be "[f]or the convenience of [the] parties and witnesses, [and] in the interest of justice." Like the First-Filed Rule, the purpose of transfer pursuant to § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Wiley*, 667 F. Supp. 2d at 172 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). District courts have "broad discretion" in evaluating these factors. *Karmaloop, Inc. v. ODW Logistics, Inc.*, 931 F. Supp. 2d 288, 290 (D. Mass. 2013) (citing *Codex Corp. v. Milgo*

9

*Elec. Corp.*, 553 F.2d 735, 737 (1st Cir.1977)).  The requirements for transfer under § 1404(a) are readily met.

        1.   The *Ridenti* Action Could Have Been Brought in the Northern District of California

An action "might have been brought" in a proposed transferee court where (1) that court would have had subject matter jurisdiction, (2) the defendants would have been subject to personal jurisdiction, and (3) venue would have been proper.  *See Van Dusen*, 376 U.S. at 616-17.  Each element is satisfied here.

First, the court in the Northern District of California would have subject matter jurisdiction over this case.  The *Ridenti* Complaint asserts that this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") because, among other things, the proposed class consists of at least 100 class members, including Massachusetts citizens, and Google LLC and YouTube, LLC are citizens of California.  *See Ridenti* Compl. ¶¶ 10-12, 14 & n.1, 50.  For similar reasons, CAFA confers subject matter jurisdiction on the court in the Northern District of California, and CAFA is one of the asserted bases for jurisdiction in *Hubbard*.  *See Hubbard* SAC ¶ 14.

Second, the Northern District of California court would have personal jurisdiction over Google LLC and YouTube, LLC because they maintain their principal places of businesses in California.  *See Ridenti* Compl. ¶¶ 11-12.

Third, venue would be proper in the Northern District of California.  Civil actions can be brought in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Both Google LLC and YouTube, LLC "reside" in the Northern District of California, and the YouTube Terms of Service specify Santa Clara as the venue for disputes involving the YouTube service.  *See* YouTube Terms of Service.

### 2. The Interests of Justice and Judicial Economy Strongly Favor Transfer

The interests of justice favor transferring this case to the Northern District of California where it can be consolidated with the *Hubbard* action. To hold otherwise and "'permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [d]istrict [c]ourts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Johnson v. N.Y. Life Ins. Co.*, No. 12-11026-MLW, 2013 WL 1003432, at *3 (D. Mass. Mar. 14, 2013) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).

Given the substantial overlap between the *Ridenti* action and *Hubbard* action, transfer of this case to the Northern District of California will further the goals of § 1404(a). *See N.Y. Life Ins. Co.*, 2013 WL 1003432, at *3. Without transfer, Google would face duplicative litigation in separate forums. Transfer will enable a single court to handle overlapping discovery issues and parallel legal disputes. *See Mead Johnson & Co.*, 2011 WL 6148656, at *14 ("Given the amount of overlap between the cases, a transfer will provide the most efficient means of resolving the dispute."); *see also Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) ("[c]oncerns over judicial efficiency are ***paramount***" where related actions are overlapping putative class actions).

Absent transfer, the risk of inconsistent rulings is particularly acute. This Court and the *Hubbard* court will have to decide overlapping legal issues and resolve overlapping discovery disputes. As noted above, both courts will have to decide in initial motions practice whether COPPA preempts plaintiffs' various state law claims, whether plaintiffs have stated valid Ch. 93A claims, and whether plaintiffs suffered cognizable injury as a result of Google's alleged practices. *Compare Hubbard*, Dkt. No. 65 at 6-12, *with* Ex. D (Google Mar. 6, 2020 Mass. Gen. Laws. Ch. 93A Response Letter). Courts favor transfer to avoid this risk of conflicting rulings.

*See, e.g.*, *Highfields Capital I LP v. Perrigo Co., PLC*, No. 19-10285-GAO, 2020 WL 1150000, at *2 (D. Mass. Mar. 10, 2020) (granting transfer to "prevent[ ] potentially duplicative litigation and inconsistent outcomes" where actions in transferee court alleged "similar federal securities violations" as the plaintiff's action); *Thermo Niton Analyzers, LLC v. Morningsight Capital, LLC*, No. 10cv10374-NG, 2010 WL 2836157, at *3 (D. Mass. July 16, 2010) (granting transfer "[g]iven the similarities in the parallel actions" and to "ensur[e] against inconsistent judgments").

Courts regularly transfer putative class actions under Section 1404(a) under circumstances such as these. *See, e.g.*, *Hawkins*, 924 F. Supp. 2d at 1214 (transfer of putative class action to the earlier-filed forum of an overlapping class action would serve the interest of justice by conserving time, energy and resources, and avoid the possibility of inconsistent judgments); *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006) (transfer of putative class action to the first-filed forum is "essential to avoid any risk of inconsistent rulings" and will enable one court to assess the "factual and legal overlap and sort out the class action issues"). This court should do the same. Transfer to the Northern District of California for consolidation with *Hubbard* also would be consistent with the Terms of Service, which provide that any litigation that involves YouTube's services be initiated in Santa Clara, California. *See* YouTube Terms of Service.

3. <u>Transfer to the Northern District of California Would Be Convenient for the Parties and Witnesses</u>

Because the *Hubbard* action is already proceeding, the issue of whether "Massachusetts is more convenient than California" should not be assessed in the abstract, but rather the Court should consider whether "sanctioning a second, nearly identical action here is more convenient than transferring the case for the purpose of consolidation." *Wiley*, 667 F. Supp. 2d at 173.

Permitting these two parallel actions to proceed in forums approximately three thousand miles apart would present significant challenges and would not outweigh the convenience of adjudicating the actions in a single court. This factor also weighs in favor of transferring the *Ridenti* action to the Northern District of California.

In analyzing whether transfer would be convenient for the witnesses, courts look not only at the potential number of witnesses, but also at the "'nature and quality of their testimony and whether they can be compelled to testify.'" *N.Y. Life Ins. Co.*, 2013 WL 1003432 at *2 (citation omitted). For any potential third-party witnesses in particular, transfer would avoid the significant burden of having to testify twice in different forums across the country. *See, e.g.*, *Ridenti* Compl. ¶¶ 29-40; *Idenix Pharms., Inc.*, 2014 WL 12782106, at *5 (holding that transfer was appropriate where "non-party witnesses reside in neither state and requiring said witnesses to travel twice for trial would result in inconvenience"); *Brand Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3-5 (D. Mass. 1987) (granting transfer to North Carolina where plaintiff's principal was the only Massachusetts resident and non-party witnesses were residents of North Carolina). The same is true for party witnesses. Key witnesses regarding the YouTube platform are located in Google's offices in California. "The prospect of having" these "witnesses testify in two different proceedings would undermine the purpose of the transfer statute to protect litigants and witnesses from 'unnecessary inconvenience and expense.'" *Mead Johnson & Co.*, 2011 WL 6148656, at *12. The fact that Google's witnesses, located in California, are likely to be central to this litigation further supports transfer. *See, e.g.*, *N.Y. Life Ins.*, 2013 WL 1003432 at *2 (testimony of Plaintiffs' Massachusetts witnesses "would be of less importance than that of the corporate New York [Life] witnesses" central to the "formulation and implementation" of New York Life's practices and policies).

4. <u>Plaintiffs' Choice of Forum Deserves Less Weight in Transferring this Putative Class Action</u>

Finally, Plaintiffs' choice of forum is "less significant" in the context of this putative class action and is easily outweighed by the numerous factors that support transfer. *N.Y. Life Ins. Co.*, 2013 WL 1003432, at *3. This is particularly true where, as here, Plaintiffs purport to assert a claim "on behalf of themselves and a Nationwide class." *Ridenti* Compl. ¶ 50; *see Wiley*, 667 F. Supp. 2d at 174 (holding plaintiff's forum choice "deserves considerably less weight" when suit is brought on behalf of a nationwide class); *see also Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . ., the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). Indeed, there are likely to be members of the Ridentis' putative class who did not reside in Massachusetts when they allegedly "viewed videos on YouTube." *Ridenti* Compl. ¶ 50. The fact that the Ridentis assert a claim under Massachusetts law does not change this analysis. Their claim is predicated on violations of COPPA and the FTC Act and thus turns on interpretation of *federal* law, not intricacies of local law. *See, e.g.*, *Ridenti* Compl. ¶ 46 (alleging that scope of "unfair practices" under Ch. 93A "should be" guided by "interpretation" of federal law). In any event, the *Hubbard* court is well-qualified to address questions of Massachusetts law, and will be deciding the substantially similar claims under Ch. 93A. *See Cummings v. Chesapeake Energy Corp.*, No. 16-CV-2338 (VEC), 2016 WL 9527989, at *3 (S.D.N.Y. Jun. 7, 2016) (noting that federal district courts are equally qualified to resolve claims under federal law and state law claims did not present complex legal issues).

## IV.  CONCLUSION

Given the substantial overlap between the parties and claims in the *Hubbard* and *Ridenti* actions, and in the interests of justice and for the convenience of the parties and the witnesses,

14

the Court should transfer this case to the Northern District of California pursuant to the First-Filed Rule and § 1404(a) for consolidation with the *Hubbard* action.

Dated:  May 19, 2020

Respectfully Submitted,

GOOGLE LLC and YOUTUBE, LLC,
Defendants,

By Their Attorneys,

/s/ *Justin O'Brien*
Justin O'Brien (BBO # 658765)
HOGAN LOVELLS US LLP
125 High Street, Suite 2010
Boston, MA 02110
Telephone: (617) 371-1000
Facsimile:  (617) 371-1037
justin.obrien@hoganlovells.com

Edith Ramirez (*pro hac vice*)
Adam Cooke (BBO # 679637)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile:  (202) 637-5910
edith.ramirez@hoganlovells.com
adam.a.cooke@hoganlovells.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2020, I caused a true and correct copy of the foregoing Memorandum in Support of Motion to Transfer to be served via ECF on all counsel of record.

 /s/ *Justin O'Brien*
Justin O'Brien